District Grand Lodge No. 4 v. Cohn.

# DISTRICT GRAND LODGE NO. 4, ETC.

## v.

## ROSA COHN.

1. VOLUNTARY BENEFICIAL ASSOCIATIONS—SUSPENSION.—Defendant
was a voluntary beneficial association, composed of subordinate lodges.
The constitution adopted by the defendant for the government of its sub-
ordinate lodges provided that "the manner of suspension for the non-
payment of dues and assessments shall be detailed in the by-laws of every
lodge, and is left to their option."   The subordinate lodge in question
never adopted any by-law on the subject of suspension as required by
the foregoing provision.   Deceased was declared suspended from such
lodge for non-payment of dues.   Six days before his sudden death by heart
disease, he gave the amount due to the secretary, who took the money, and

said he would bring the matter before the association at its next meeting. *Held*, that the attempted suspension of deceased was wholly without authority, and void; that said payment was effectual to relieve deceased of the charge of the delinquency, and that he was in good standing at the time of his death.

2. BY-LAWS—CUSTOM.—The fact that the subordinate lodge, in the absence of a by-law, had been accustomed to pursue a particular course of procedure as to suspensions, did not, under the circumstances of this case, give such custom the force of a by-law.

APPEAL from the Superior Court of Cook county; the Hon.· ELLIOTT ANTHONY, Judge, presiding. Opinion filed December 8, 1886.

This was a suit brought by Rosa Cohn, widow of Joseph Cohn, deceased, against the District Grand Lodge No. 4, Order Kesher Shel Barzel, to recover the sum of $1,000, payable by the rules of the order to the widow, or other designated beneficiary of deceased members of the subordinate lodges in the district, out of the endowment fund in charge of said Grand Lodge. By agreement of the parties, the cause was submitted to the court below for trial, without formal pleadings, upon an agreed statement of the facts, a jury being waived. At such trial the court found for the plaintiff, and assessed her damages at $1,001, and for that sum and costs the plaintiff had judgment.

From the agreed statement of facts it appears that Germania Lodge No. 83, Order Kesher Shel Barzel, is one of the subordinate lodges within the jurisdiction of the defendant Grand Lodge, and that said Grand Lodge and subordinate lodge are voluntary organizations governed by a constitution and by-laws which provide, among other things, for the creation of an "endowment fund" for the purpose of securing to the widow, children or legatee of every member who should die, an endowment of $1,000. To create such fund each lodge was required to contribute $1 for each member initiated, and an assessment of $1.50 for each member every month in the year except December and January; and it was provided that the several lodges should be responsible for the payment of all assessments according to the number of its members entitled to

endowment, but that the mode of collecting the same from their members, either as a part of the regular dues or otherwise, should be determined by each lodge in its by-laws. In case of the death of a member, the secretary of his lodge was required to send to the secretary of the endowment fund a certificate, stating the name, age and residence of the deceased, the cause, date and place of his death, and that at the time he was a member in good standing, and also the name and address of the beneficiary to whom the money should be sent. It was further provided that, on receipt of such certificate, if it should be found to be correct, and if the lodge should not be delinquent, the sum of $1,000 should be remitted by the Grand Lodge to the beneficiary named in the certificate.

Among the provisions of the constitution adopted by the defendant Grand Lodge for the government of its subordinate lodges were the following:

" It shall be the duty of the secretary of each lodge to report at every regular meeting the names of any members in arrears. The manner of suspension for the non-payment of dues or assessments shall be detailed in the by-laws of every lodge, and is left to their option.

" A member suspended for the non-payment of dues or assessments, and making application within ninety days thereafter, may be re-instated by a two-thirds majority of the members present and paying all his arrears.

" Every brother of the order obligates himself to support the constitution and laws of the order, and to conform to the laws, rules and regulations of the lodge of which he is a member.

" Every lodge shall govern its own internal affairs, subject to such restrictions as are imposed by the organic laws of the order."

It further appears that the laws of the order, as revised and adopted by the Supreme Lodge, of which the defendant Grand Lodge is a subordinate branch, provided among other things as follows:

" A brother shall be considered in good standing if he shall have paid all charges, dues and fines against him, in the man-

ner and at the time provided by the laws of his respective district and lodge, and if he shall not be under a sentence of suspension."

The by-laws of Germania Lodge provided, among other things, as follows:

"The regular meetings of this lodge occur on the second and fourth Sundays of each month.

"Special meetings, when called for by five members in good standing, stating in writing the purpose of the meeting, or if the president deem it necessary, may be had.

"At the last meetings in the months of March, June, September and December, which are the regular general meetings, as well as at all special meetings, all members living in this city (Chicago) shall have written invitations.

"Each member must pay a regular quarterly due of $2, payable at the last meeting in the months of March, June, September and December, of which twenty-five cents are payable to the United Hebrew Relief Association; also, the amount for paid night watches with sick members shall be chargeable to the members *pro rata*. For deaths in this district, the members shall pay the dues imposed by the board of endowment within thirty days, to the lodge.

"The financial secretary shall keep proper accounts between the brothers and the lodge, receiving all moneys, and upon receipts therefor, giving them to the treasurer. He shall remind brothers in arrears of their delinquency, and shall report to the lodge such members as are indebted longer than the legal time.

"A member who does not pay his quarterly dues, fines and other demands to the lodge at the maturity of the legal time, may be declared in arrears, and he loses his financial demands on the lodge, as well as the right to vote and speak, and he recovers said rights only when he shall have paid his whole debt to the lodge.

"No part of these by-laws, or of those which may be adopted in a legal way in the future, can be recalled, annulled, improved or amended, unless upon a written proposition of at least five members handed into the lodge. Said proposition

District Grand Lodge No. 4 v. Cohn.

must be read in two succeeding meetings, and if, in the third meeting, which must either be a quarterly or a special meeting, it shall have been read once more, and after debate two thirds of the votes favor it, it shall be considered a law."

The records of a special meeting of said lodge held May 25, 1884, contain the following:

"The president opened the special meeting for this evening. The resolution of brother M. Ohnstein was then read a third time as follows: 'That the quarterly dues of members of this lodge shall amount to five dollars and twenty-five cents; that assessments and all other contributions to the lodge be included therein, and that this rule govern the lodge for the year 1884.' Upon a vote taken, the resolution was adopted, and was delared by the president as being the law from this date."

It is admitted that during the lifetime of the plaintiff's husband, said Germania Lodge had no other printed by-laws in reference to arrearages and suspensions of members, or to their re-instatement after suspension, than those above set forth; and that said lodge had passed no by-law on the subject of suspensions such as is required by the constitution of said Grand Lodge, but has been accustomed to act as follows:

"A member who does not pay his dues and assessments to the lodge within four weeks after the quarter, shall be notified to pay the same within fourteen days, and if he does not pay, he shall be considered in arrears, and he is not entitled to lodge benefits. A member so in arrears shall be notified by the secretary in writing, to pay within thirty days, in default whereof the member shall be suspended."

It is further admitted that, for five years prior to November 23, 1884, Joseph Cohn, the plaintiff's husband, was a member in good standing of said Germania Lodge, and as a member in good standing, was entitled to the benefits of said endowment, amounting, in case of his death, to the sum of $1,000, payable to his wife; that after the passage of the resolution of May 25, 1884, he was charged on the books of the lodge, under date of June 22, 1884, with the sum of $4.75, representing his dues for the preceding quarter accord-

ing to said resolution, less fifty cents to adjust the account; that under date of October 12, 1884, he was charged on said books $5.25 for his dues for the quarter ending September 30, 1884, and also twenty-five cents for a special assessment chargeable against each member of the lodge; that on May 22, 1884, the secretary of said lodge mailed to said Cohn a notice of his indebtedness of $4.75 for the quarter then past, and on October 22, 1884, he also mailed to him a notice of the indebtedness of $10.25, for the preceding two quarters, and notified him that unless a payment should be made within the next thirty days, he would be suspended from membership in accordance with the law; that on the 23d day of November, 1884, said lodge recorded in its minutes the following: "The secretary notified the lodge that brother Joseph Cohn has received a lawful suspension notice to pay up at the latest, to-day, and that the same was not paid to-day. The president, then in the lodge, declared brother Joseph Cohn legally suspended." November 24, 1884, the secretary notified said Cohn of his suspension, and on the second day following, said Cohn came to said secretary and paid him $10.25, the full amount of his dues to the lodge, saying that he wished to be re-instated in the lodge; that he had forgotten to attend the meeting of the preceding Sunday to pay his dues. Cohn requested of the secretary a receipt for said money, which the secretary declined to give him, telling him that he would take the money and place it before the lodge at its next meeting, and state that he, Cohn, wished to be re-instated in the lodge. Said secretary implicitly believed that he would be re-instated, and for that reason neglected to report the suspension to the Grand Lodge as required by the rules of that body. Cohn at the time appeared to be in excellent health, but on the 2d day of December, 1884, and prior to the next meeting of the lodge, he suddenly died of heart disease. The secretary thereupon reported to the Grand Lodge the facts in relation to the suspension of said Cohn, to his subsequent payment of his dues, and to his death, but the Grand Lodge refused to pay said endowment to the plaintiff, and has ever since refused to pay the same.

District Grand Lodge No. 4 v. Cohn.

It was further admitted that at the time of said suspension of said Cohn and thereafter said Germania Lodge was in good standing with said endowment fund.    It was agreed that the court below, upon consideration of said admitted facts, should render judgment thereon, with the right to either party to appeal, and that if judgment should be rendered for the plaintiff it should be for the sum of $1,001 and costs, and that such judgment should be rendered notwithstanding the failure of the Germania Lodge to forward a certificate of death, as required by the rules of the Grand Lodge as above set forth.

Mr. Julius Stern, for appellant; that a by-law of a voluntary association need not of necessity be reduced to writing or be printed, in order to be binding upon the members of the association, cited Bank of Holly Springs v. Pinson, 58 Miss. 421 ; King v. Ashwell, 12 East, 22;   Angell & Ames on Private Corporations, § 328, 329; Field on Private Corporations, § 305.

As to the vital necessity of a strict compliance, by members of voluntary beneficial associations, with the rules for making payment to the common fund:   Yoe v. Benj. C. Howard Mut. Ben. Asso., 63 Md. 86 ; Madeira v. Merchants' Exchange Mut. Ben. Asso., 16 Federal Reporter, 749.

Messrs. Moses, Newman & Reed, for appellee.

Bailey, J.   The defendant is a voluntary organization, having for one of it objects the accumulation and administration of a fund for the benefit of the widows, orphans or devisees of the deceased members of the various subordinate lodges subject to its jurisdiction.   Said fund is composed of contributions from said subordinate lodges, in proportion to their respective membership, and in consideration of such contributions, the defendant undertakes to pay the sum of $1,000 to the widow, orphans or devisee of each person who, at the time of his death, was a member in good standing in one of said subordinate lodges.

For several years Joseph Cohn, the plaintiff's husband, was

a member in good standing. of Germania Lodge, one of said subordinate lodges, under an arrangement by which the $1,000 payable at his death should be paid to the plaintiff. On the 2d day of December, 1884, said Cohn died, and the plaintiff's right to recover of the defendant the sum payable at his death, depends wholly upon the question whether said Cohn, at the time of his death, was a member in good standing of Germania Lodge.

By a law of the Supreme Lodge of the order, which is bind-ing upon all subordinate lodges and their members, it is declared that a member shall be considered in good standing if he shall have paid all charges, dues and fines against him, in the manner and at the time provided by the laws of his district and lodge, and if he shall not be under sentence of suspension. One of the by-laws of the Germania Lodge pro-vides that a member who does not pay his quarterly dues, fines and other demands to the lodge at the maturity of the legal time, may be declared in arrears, and he shall lose his financial demands on the lodge, as well as his right to vote and speak, and he recovers said rights only when he shall have paid his whole debt to the lodge.

For some time prior to his death, said Cohn had been delin-quent in the payment of his dues to his lodge, so that on the 26th day of November, 1884, six days prior to his death, the books of the lodge showed an indebtedness for dues and as-sessments of $10.25. On that day he paid that sum in full to the secretary of the lodge, said secretary receiving the money, promising to place it before the lodge at its next meeting and so far as appears, said money still remains in the possession of the lodge, or of the secretary, who was one of its principal officers. We are of opinion that said payment was effectual to relieve said Cohn of the charge of delinquency, and that he was in good standing at the time of his death, within the meaning of said by-laws, unless there was, as the defendant claims, a valid sentence of suspension then in existence against him.

The records of Germania Lodge show that certain proceed-ings were had at a meeting of the lodge held on the 23d day

of November, 1884, in relation to Cohn's delinquency, which it is alleged amount to a legal suspension. The record, verbatim, is as follows: "The secretary notifies the lodge that Brother Joseph Cohn has received a lawful suspension notice to pay up at the latest to-day, and that the same was not paid. The president then, in the lodge, declared Brother Joseph Cohn legally suspended." It also appears that on the 22d day of October, 1884, the secretary mailed to said Cohn a notice of his indebtedness, and that unless a payment should be made within the thirty days next ensuing, said Cohn "would be suspended in accordance with the law." This seems to be the notice referred to in the proceedings for said suspension.

Was this suspension valid? The constitution adopted by the defendant for the government of its subordinate lodges provided that, "The manner of suspension for the non-payment of dues and assessments shall be detailed in the by-laws of every lodge, and is left to their option." It is clear that this provision, which is a part of the fundamental law of Germania Lodge, required the adoption of by-laws fixing and prescribing the manner of suspending members for the non-payment of dues and assessments, before the power to pronounce a sentence of suspension could be exercised. The language of said constitution is imperative and mandatory, and while it leaves the lodges free to adopt such mode of procedure in the matter as they see fit, the mode adopted, whatever it may be, is imperatively required to be embodied in the by-laws of the lodge.

It is admitted, however, that Germania Lodge has never adopted any by-law on the subject of suspensions as required by the foregoing provisions of its constitution. It had then no mode of procedure consistent with or authorized by its organic law for suspending persons from membership, and its attempted suspension of Cohn was therefore wholly without authority and void.

The case would have been different, if there had been no provision in either the constitution or by-laws of the lodge on the subject of suspension. It might then have been held, perhaps, that it was an incidental power, inherent in organiza-

tions of that character, to suspend or expel its members for any cause which it might deem sufficient, and to adopt such mode of procedure in the premises as it might see fit. The admitted facts in this case, however, show that, by the organization and laws of the order, the subordinate lodges bear such relation to the Grand Lodge, that the latter was empowered to prescribe a code of laws or constitution for the organization and government of the subordinate lodges, and that in the exercise of that power it had required such lodges to provide by their by-laws for the manner of suspension from membership, and limited the power of suspension to the mode which should be thus provided.

But it is urged that, as Germania Lodge, in the absence of a by-law, has been accustomed to pursue a particular course of procedure, such custom should be given the force of a by-law. To this view we are unable to assent. It may be that in the case of ordinary corporations, by-laws need not necessarily be in writing, but may be adopted by long continued and invariable custom, but the authorities on that subject do not hold that a custom may take the place of a by-law, but that it may be resorted to as evidence of the adoption of a by-law. But in the present case, aside from the admission that the lodge passed no by-law on the subject of suspensions, no custom or usage is shown which affords any evidence of the adoption of an unwritten by-law. It appears merely that the lodge, in the matter of suspensions, has been accustomed to act in a particular manner, but it does not appear when, how long, or to what extent such custom has been pursued, or whether it has been uniform or only adopted in particular instances. This comes far short of such custom as will be construed into a by-law.

But there is another reason why the custom insisted upon can not be regarded as a by-law. The lodge passed, promulgated and caused to be published, a code of by-laws for the government of its proceedings in a great variety of matters, and we have failed to find any decision holding, that where a corporation has expressly adopted a code of by-laws, other by-laws will be implied from custom or usage. Indeed, the

adoption and promulgation of a code of by-laws in the ordinary way, by an express vote of the members of the corporation, would seem to exclude the possibility of constructing additional by-laws from the mere customs or modes of procedure which the corporation may see fit to adopt in the administration of its affairs.

But even if the custom contended for should be given the force of a by-law, it seems clear that it was not pursued in attempting the suspension of Cohn. The following is the custom as set out in the record:

"A member who does not pay his dues and assessments to the lodge within four weeks after the quarter, shall be notified to pay the same within fourteen days, and if he does not pay he shall be considered in arrears, and he is not entitled to lodge benefits. A member so in arrears shall be notified by the secretary, in writing, to pay within thirty days, in default whereof the member shall be suspended."

The dues as to which Cohn was delinquent were for the two quarters ending respectively June 30th and September 30th. The dues for the first of these quarters were payable at the last meeting, which was the fourth Sunday in June, and for the second quarter the fourth Sunday in September. The only notice sent to Cohn in relation to the dues for the quarter ending June 30th, as shown by the record, was mailed to him May 22d, which was long before said dues were payable. The only other notice shown to have been sent him in relation to the dues of either quarter, was mailed October 22d, that notice requiring the payment of the dues of both quarters. It is not shown, as to the dues of either quarter, that after Cohn had failed to make payment within four weeks after the quarter, he was notified to pay within fourteen days, and failing to make payment within that time, reached that stage in the proceedings where he could be "considered in arrears," and after becoming so "in arrears," he was again notified to pay within thirty days, and make default in payment during all that period. But by the custom contended for, each of these steps was clearly essential to a valid suspension. It was necessary to wait four weeks after the expiration

of the quarter, and then if the dues were unpaid, to notify the delinquent to pay within fourteen days. If he still remained delinquent, he was to be considered in arrears, and when so in arrears, he was to be again notified to pay within thirty days thereafter, and it was only when the delinquency had extended to the termination of this latter period, that sentence of suspension could be pronounced. There is no pretense that the fourteen days notice was given, or that any steps were taken to put Cohn "in arrears," the first and only notice given after the expiration of either quarter being the thirty days notice which the secretary denominates a "suspension notice."

There is, then, no possible view of the case in which it can be held that the suspension of Cohn was valid or authorized. It follows that it was illegal and void. Such being the case, Cohn, at the time of his death, was entitled to be regarded, and should in law be regarded, as in good standing in his lodge. The court below then decided correctly in giving judgment for the plaintiff. The judgment will be affirmed.

Judgment affirmed.